IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JEMAR AHTON MASON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 25-3198-JWL |
| | ) |
| Warden, FCI-Ashland,[1] | ) |
| | ) |
| Respondent. | ) |
| | ) |

**MEMORANDUM AND ORDER and**
**ORDER TO SHOW CAUSE**

Petitioner filed a *pro se* petition for habeas corpus under 28 U.S.C. § 2241, by which he challenges the calculation of credits against his sentence. For the reasons set forth below, the petition is **denied in part and retained under advisement in part**. The petition is retained under advisement with respect to petitioner's claim that he has been improperly denied credit against his sentence for time spent in custody prior to the date of sentencing; respondent is ordered to show cause in writing, on or before **January 12, 2026**, why that particular claim regarding prior custody credit should not be granted, and petitioner may then file a supplemental reply brief (limited to that issue) on or before **February 2, 2026**. The petition is denied with respect to all other claims asserted by petitioner.

---

[1] Petitioner was transferred to a different facility after filing his petition, and therefore his present custodian has been substituted as the proper respondent.

Petitioner was convicted of a drug conspiracy offense and a money laundering offense in federal court, and on December 20, 2022, he was sentenced to a term of imprisonment of 87 months. Petitioner filed the instant petition on September 19, 2025, at which time he was incarcerated within this judicial district. Respondent has filed an answer to the petition, petitioner has filed a traverse, and the matter is therefore ripe for ruling.

Respondent first argues that petitioner failed to exhaust his administrative remedies as required. Petitioner argues, however, that he was denied access to the requisite administrative grievance forms, and he has provided evidence that he complained about that denial of access to prison officials. Accordingly, the Court declines to dismiss the petition on the basis of a lack of exhaustion, and thus it proceeds to address the merits of the petition.

Petitioner argues that the Bureau of Prisons (BOP) has not correctly calculated his release date and pre-release custody placement date, based on a proper application of prior custody credits, good conduct time (GCT) credits, credits authorized by the First Step Act (FSA), and placement under the Second Chance Act (SCA). According to records submitted by respondent, as of November 2025 the BOP had calculated the following with respect to petitioner's release. (1) The full term of petitioner's 87-month sentence expires on July 12, 2029, based on 250 days of prior custody credit, covering the period from December 1, 2020, through July 8, 2021, and the period from August 11, 2022, through September 9, 2022. (2) Petitioner's statutory projected release date is June 16, 2028, based on the application (to the full-term date) of a projected total of 391 GCT days to be earned at the maximum rate of 54 days per year (with 162 GCT already earned). (3) (a)

Petitioner's FSA projected release date is July 2, 2027, based on the application (to the statutory projected release date) of 350 days of FSA credit earned thus far; (b) his projected conditional FSA release date is June 17, 2027, based on the assumption that petitioner will have earned the maximum 365 days of FSA credit that may be applied to release; and (c) his projected conditional date of placement in pre-release custody is December 19, 2026, based on the assumption that petitioner will have earned 180 days of FSA credit that may be applied to pre-release custody.

*First*, petitioner claims that he has not been granted the proper amount of credit for time spent in custody prior to sentencing pursuant to 18 U.S.C. § 3585(b). *See id.* (a defendant shall be given credit for time spent in detention prior to the commencement of the sentence that has not been credited against another sentence). Respondent has submitted the evidence described above, which shows that petitioner has been given credit for 250 days in custody prior to his sentencing. A custody report submitted by respondent shows that petitioner was in custody during those two periods of time for which he was given 250 days of credit. Petitioner argues, however, that he should also be given credit for the period from September 9, 2022, through December 20, 2022 (the date of sentencing). Respondent has not addressed why petitioner was not given credit for that period. As petitioner notes, that same custody report indicates that although petitioner was briefly "out" of custody on bond on September 9, 2022, his custody status for the period following September 9, 2022, was "in", with the notation "Remanded – Judge Ordered." Thus, it appears from the evidence submitted by respondent that petitioner was in custody during that period. Respondent has not suggested any reason why petitioner should not

3

receive credit under Section 3585(b) for all time spent in custody prior to his sentencing; thus, it further appears that petitioner should be given credit for that period.

Accordingly, because respondent has not addressed this precise issue, the Court will retain under advisement this specific claim regarding petitioner's prior custody credit. Respondent is ordered to show cause in writing on or before January 12, 2026, why the Court should not grant the petition with respect to petitioner's claim for prior custody credit for the period from September 9, 2022, through December 20, 2022. Petitioner may then file a supplemental reply, limited to that single issue, on or before February 2, 2026.

*Second*, petitioner appears to argue that the BOP has improperly calculated his sentence using a sentence commencement date of February 28, 2023, instead of using December 20, 2022, the date he was sentenced. Petitioner seemingly bases this claim on the fact that one record submitted by respondent lists February 28, 2023, as petitioner's "date committed." The records show, however, that the BOP has calculated a full-term expiration date using the date of sentencing as the start date (before applying the prior custody credit). Thus, petitioner has not shown that the BOP has improperly denied him credit after the date of sentencing, and the Court therefore denies any such claim.

*Third*, petitioner claims that the BOP has miscalculated and misapplied his GCT credits. The Court denies this claim, as petitioner has not explained how the BOP has erred in applying GCT credits earned to date and in projecting the total credits that petitioner may earn at the maximum rate. As the Court rules with respect to FSA credits (see below), GCT credits cannot be applied prior to having been earned for each year of imprisonment, and petitioner has cited no authority to the contrary.

4

*Fourth*, petitioner claims that the BOP has miscalculated and misapplied his FSA credits. Petitioner's argument that he should have been eligible for placement in pre-release custody in April 2025 ultimately turns on this claim concerning his FSA credits.

The BOP records show that petitioner has earned 350 days of FSA credits so far, which have been applied to yield a projected release date of July 2, 2027. Petitioner argues that applicable policies and guidance require the BOP to project release and placement dates based on future FSA credits. The BOP has done so in his case, however, as the records show that petitioner has been given a conditional release date of June 17, 2027, based on an assumption that petitioner will earn the maximum additional 15 days of credit to apply toward his release date; and a conditional placement date of December 18, 2026, based on a projection that petitioner will earn an additional 180 days of credit (if earned at his present rate) to be applied toward pre-release custody.

Petitioner also argues that he has earned 936 days of FSA credit, application of which the BOP has denied. Petitioner does not fully explain how he arrived at that figure, but it cannot represent credits that he has already earned to date, as his claim of 786 days of credit beginning in March 2024 at a rate of 15 days per 30 days of programming would require over four years of programming. Thus it appears that plaintiff is arguing that he should be given credit prospectively for FSA credit that he may earn for programming in the future if he serves his full term. The Court rejects any such claim – for which petitioner has cited no supporting caselaw – as petitioner clearly must complete the programming to earn credits, and credits cannot be applied to effect petitioner's release or placement until after they are earned. Petitioner relies on the policy requiring projected release and

5

placement dates to be calculated; but as noted above, the BOP has done so, based on credits petitioner may earn prior to their application to effect release or placement. Petitioner's interpretation would yield an absurd result whereby he would get FSA credit for future programming, leading to an earlier release date, after which he would then have no obligation to complete the programming that he needed to complete to receive that credit.[2]

Petitioner also argues that the BOP has improperly determined the starting date on which he began to earn FSA credits at a higher rate. Under the FSA, a prisoner earns ten days of time credits for every 30 days of successful participation in programming, but the rate increases to 15 days per 30 days of programming for a prisoner who has been determined by the BOP "to be at a minimum or low risk of recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism." *See* 18 U.S.C. § 3236(d)(4)(A). Petitioner was given credit at the 15-day rate after he earned a second consecutive low-risk recidivism assessment, but he argues that once he received the second assessment, he should have been allowed retroactively to receive credits at the higher rate since the date of the first low-risk assessment. The Court previously rejected a similar argument as follows:

> The Court rejects petitioner's argument that the FSA allows him to be awarded ETCs [FSA credits] at the higher 15-day rate for the period prior to his second consecutive minimum or low assessment. The statute does not state that a prisoner shall receive ETCs at the higher rate during all periods in which had a low or minimum risk score. Rather, the FSA provides that a

---

[2] The Court also rejects petitioner's argument that he should earn FSA credit from the time of his completion of the programming and not from the time such credit is "posted" by the BOP to his record, as petitioner has not cited any authority to support that argument, and he has not shown that any such delay in his case has affected his proper release and placement dates.

> prisoner shall "earn" credits at the 10-day rate, and that a prisoner who has had two consecutive low or minimum assessments shall "earn" ETCs at the 15-day rate, *see id.* § 3632(d)(4)(A), and the use of the word "earn" (as used in its ordinary meaning) means that a prisoner is entitled to ETCs at the higher rate only for the period after that second assessment (during which period the prisoner is "earning" those credits).

*See Adkins v. Hudson*, 2024 WL 623996, at *2 (D. Kan. Feb. 14, 2024) (Lungstrum, J.). The Court further noted in *Adkins* that its conclusion based on the plain meaning of the statute was consistent with the weight of authority, and that the petitioner had not cited any contrary authority. *See id.* (citing cases). Similarly here, petitioner has not cited any authority to support his interpretation, which the Court again rejects. The Court therefore denies petitioner's claim relating to the application of FSA credits.

*Fifth*, with respect to placement in pre-release custody pursuant to the SCA, petitioner takes issue with a default figure of zero months for SCA credit in his BOP records. Those records state, however, that the default of zero is used because any decision for early placement under the SCA may only be made after an individualized assessment. Such an assessment has been conducted for petitioner, and he has received a recommendation for nine months in pre-release custody, which, according to respondent, moves his projected date for placement in pre-release custody to March 24, 2026. Petitioner has not disputed these facts or shown that this recommendation violates applicable federal law. The Court therefore denies any claim based on application of the SCA.

Accordingly, the Court denies all claims in the petition with the exception of the single claim relating to credit for prior custody, which the Court retains under advisement pending additional briefing.

IT IS THEREFORE ORDERED BY THE COURT THAT the petition for habeas corpus under 28 U.S.C. § 2241 is hereby **denied in part and retained under advisement in part**. The petition is retained under advisement with respect to petitioner's claim that he has been improperly denied credit against his sentence for time spent in custody prior to the date of sentencing; and the petition is denied with respect to all other claims asserted by petitioner.

IT IS FURTHER ORDERED BY THE COURT THAT respondent shall show cause in writing, on or before **January 12, 2026**, why petitioner's claim regarding prior custody credit should not be granted; petitioner may then file a supplemental reply brief (limited to that issue) on or before **February 2, 2026**.

IT IS SO ORDERED.

Dated this 19th day of December, 2025, in Kansas City, Kansas.

/s/ John W. Lungstrum
Hon. John W. Lungstrum
United States District Judge